**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Sheri L. Weidner,

    Plaintiff,

    v.                                      Case No. 1:08cv643

Commissioner of Social Security,         Judge Michael R. Barrett

    Defendant.

## ORDER

Before the Court is the November 10, 2009 Magistrate Judge's Report & Recommendation ("R&R"). (Doc. 8)

The parties were given proper notice, pursuant to 28 U.S.C. § 636(b)(1)(C), including notice that the parties would waive further appeal if they failed to file objections to the R&R in a timely manner. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).[1] Plaintiff filed timely Objections to the R&R. (Doc. 10)

**I.  PROCEDURAL BACKGROUND**

On March 11, 2004, Plaintiff filed an applications for SSI and DIB alleging a disability due to limited intelligence, mood disorder, schizophrenia, depression, PTSD, and problems with her left ankle, knees, and back. (Tr. 16) Plaintiff's claims were denied initially and on reconsideration. The Administrative Law Judge ("ALJ") held hearings on March 6, 2007. (Tr. 484) On January 14, 2008, the ALJ entered his decision finding Plaintiff not disabled because she was capable of performing a significant number of jobs in the national

---

[1]A notice was attached to the Magistrate's Report and Recommendation regarding objections.

economy. (Tr. 24-34) That decision became the Commissioner's final determination upon denial of review by the Appeals Council. (Tr. 7)

## II.     MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

In the R&R, the Magistrate Judge recommends affirming the ALJ's finding of non-disability. The Magistrate Judge noted that the ALJ found that Plaintiff has the following severe impairments: history of polysubstance abuse in alleged remission; mood disorder; borderline intellectual functioning; residuals of bilateral arthroscopic knee surgeries; obesity; and (since September 2005) residuals of left ankle surgery. The Magistrate Judge also noted that the ALJ found that Plaintiff had the residual functional capacity to: lift up to 50 pounds occasionally and 25 pounds frequently; she is limited to inside working in a temperature-controlled, clean-air environment; unskilled, simple tasks; no extended periods of concentration; and she is limited to low-stress jobs that are not fast paced, have no above average pressure for production, no more than occasional dealing with the public, and no more than minimal contacts with supervisors and coworkers, including no teamwork.

Before the Magistrate Judge, Plaintiff argued that the ALJ made the following errors: (1) the ALJ erred in the weight he afforded to the doctors and psychologists; (2) the ALJ erred when he failed to note her borderline intelligence; (3) the ALJ erred when he relied on erroneous factors to determine her credibility; and (4) the ALJ erred when he did not include all of Plaintiff's limitations in the hypothetical questions asked to the VE.

The Magistrate Judge found that the ALJ's decision was supported by substantial evidence, and rejected Plaintiff's alleged errors. First, the Magistrate Judge found that the ALJ properly weighed the medical opinions in the record. The Magistrate Judge found that

the ALJ properly did not give controlling weight to the opinion of Dr. Freeland, who saw Plaintiff on three occasions. The Magistrate Judge also found that the ALJ sufficiently explained his reasons for rejecting the opinion of Dr. Freeland. Second, the Magistrate Judge found that the ALJ properly determined that Plaintiff did not meet Listing 12.05(c). Third, the Magistrate Judge found that the ALJ properly determined that Plaintiff was not fully credible. Finally, the Magistrate Judge found that because the ALJ properly determined Plaintiff's residual functional capacity ("RFC"), the hypotheticals to the VE were also proper.

In her objections, Plaintiff argues that the following errors were made by the Magistrate Judge: (1) if the opinion of Dr. Freeland was not entitled to controlling weight, it should have been given the most weight; (2) the RFC should have included the limitation of the reviewing psychologist that Plaintiff was limited to parallel work and not competitive work; (3) the ALJ did not give good reasons for discounting the opinion of Dr. Freeland; (4) the ALJ failed to find that Plaintiff meets Listing 12.05(c); and (5) the ALJ erred in determining Plaintiff's credibility.

### III.  ANALYSIS

#### A.  Standard of Review

The Court's review of the Social Security Commissioner's decision is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The substantial evidence standard presupposes that "there is a zone of choice within which the [Commissioner] may proceed without interference from the court." *Felisky*

*v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir. 1987). Consequently, this Court should defer heavily to such findings by the Commissioner. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky,* 35 F.3d at 1035, *citing Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986).

### B. Opinion of Dr. Freeland

Plaintiff argues that if the opinion of Dr. Freeland was not given controlling weight, it should have been given the most weight. Plaintiff also argues that the ALJ did not give good reasons for discounting the opinion of Dr. Freeland.

The Sixth Circuit has explained that where "the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors . . . in determining what weight to give the opinion." Bowen v. Commissioner of Social Sec., 478 F.3d 742, 747 (6th Cir. 2007), *quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). These factors are found in sections 404.1527(d) and 416.927(d) of the regulations, which instruct that in weighing a treating source's opinion, the ALJ is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. The regulations also provide that that "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

As the Magistrate Judge noted, the ALJ explained in some detail why he rejected the opinion of Dr. Freeland, who only saw Plaintiff three times. Plaintiff argues that even though Dr. Freeland only saw Plaintiff three times, the reviewing physician did not examine Plaintiff at all. However, as the Magistrate Judge noted, Dr. Freeland's opinions were documented on the first day, and very little was recorded regarding the two subsequent visits. As the Magistrate Judge noted, the ALJ found that Dr. Freeland's opinion was not well-supported because her notes were sparse and did not set forth any objective observation. Instead, Dr. Freeland appeared to accept Plaintiff's allegations of mood swings and hearing voices. As the Magistrate Judge noted, the ALJ found that the other evidence in the record did not support Dr. Freeland's limitations.

While Plaintiff cites to portions of the record purportedly showing Plaintiff's subsequent visits to see Dr. Freeland in 2005 and 2006, the Court notes that those treatment records only document the 2004 visits with Dr. Freeland which were discussed by the ALJ.[2]

Therefore, the Court finds that the Magistrate Judge did not err in finding that it was proper for the ALJ to not give controlling weight to the opinion of Dr. Freeland and that the ALJ sufficiently explained his reasons for the weight given to the opinion of Dr. Freeland.

### C.  Limitation of parallel work

Plaintiff argues that the RFC should have included the limitation of the reviewing psychologist that Plaintiff was limited to parallel work and not competitive work.

Although it is true that an ALJ may assess a claimant's RFC for work only after all

---

[2] The cited portion of the record also includes treatment records from other providers.

of the claimant's limitations have been taken into account, 20 C.F.R. § 416.945, the ALJ "is required to incorporate only those limitations [he] accept[s] as credible," *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ noted that the reviewing psychologist stated that Plaintiff could do "parallel not cooperative work." (Tr. 28) The ALJ specifically stated that he was basing the RFC on this assessment. (Id.) The Court concludes even if the ALJ did not include this specific limitation in the RFC, the ALJ incorporated the limitation in the RFC by stating that Plaintiff was limited to low-stress jobs that have "no more than minimal contacts with supervisors and coworkers, including no teamwork." (Tr. 24) Therefore, the Magistrate Judge did not err in finding that the ALJ's RFC and hypotheticals to the VE were proper.

**D.  Listing 12.05(c)**

Plaintiff argues that she meets Listing 12.05(c). Listing 12.05 provides:

12.05 Mental Retardation and Autism: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

B. A valid verbal, performance, or full scale IQ of 59 or less;

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work related limitation of function;

D. A valid verbal, performance, or full scale IQ of 60 through 70, or in the case of autism, gross deficits of social and communicative skills, with either condition resulting in two of the following:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Plaintiff argues that she meets the requirements of section "C" because she had an IQ test score of 70, and based on the "other limitations which the ALJ found with regard to her other mental impairments and to her physical impairments." Plaintiff argues that she meets the requirements of the introductory paragraph because at age 17 she read at the 3.3 grade level and spelled at the 3.4 grade level.

A claimant is not required to produce an IQ score obtained prior to age 22. *West v. Com'r Social Sec. Admin.*, 2007 WL 1991059, *5 (6th Cir. July 5, 2007) (unpublished). However, there must be some testing or evaluation contemporaneous with the developmental period. *See Foster*, 279 F.3d at 354-55 ("Foster has failed to show that her general intellectual functioning was 'significantly subaverage' prior to that age. None of her testing or evaluation was contemporaneous with her developmental period; she was already 42 years of age when the first testing was performed . . . ."). As the Magistrate Judge pointed out, in finding that Plaintiff did not meet Listing 12.05(c), the ALJ noted that Plaintiff's school records show scores in 1999 of verbal IQ of 77, performance IQ of 86,

and full-scale IQ of 79. (Tr. 24) Therefore, the testing from the developmental period indicates that Plaintiff's general intellectual functioning was not "significantly subavage." While it appears Plaintiff did have some difficulty in reading and spelling, the Sixth Circuit has said that poor academic performance, in and of itself, is not sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two. *Hayes v. Commissioner of Social Sec.*, 2009 WL 4906909, *5 (6th Cir. Dec. 18, 2009) (unpublished).

Plaintiff argues that nonetheless, the ALJ erred in failing to find that Plaintiff equaled Listing 12.05(c). However, as the Sixth Circuit has explained:

> Although the presence of multiple impairments can on occasion support a finding that the impairments are equivalent to a listing, a finding of equivalence under Listing 12.05(C) will " 'very rarely be required.' " *Riley v. Apfel*, No. 97-1799, 1998 WL 553151, at *5 (6th Cir. Aug. 20, 1998) (unpublished table decision) (quoting Social Security Programs Operations Manual DI24515.056DIC).

*Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Therefore, the Court finds that the Magistrate Judge did not err in finding that there was substantial evidence to support the ALJ's finding that Plaintiff did not meet Listing 12.05(c).

### E. Credibility

Plaintiff argues that the Magistrate Judge erred in determining Plaintiff's credibility. Plaintiff seems to argue that her mental impairments cause the behaviors which the Magistrate Judge cited as indicating a lack of credibility. Specifically, Plaintiff argues that the Magistrate Judge cited lack of effort, fatigue, and the writing of bad checks.

The Court does not find these references in the Magistrate Judge's R&R as a basis for supporting the ALJ's credibility finding. Instead, the Magistrate Judge correctly noted

that an ALJ's findings on credibility are to be accorded great weight. The Magistrate Judge also reviewed the ALJ's credibility finding and determined that it was supported by substantial evidence. Therefore, the Magistrate Judge did not err in rejecting Plaintiff's arguments regarding her credibility.

## IV.  CONCLUSION

Upon *de novo* review of this matter, pursuant to 28 U.S.C. § 636, the Court finds no error in the Magistrate Judge's R&R. Accordingly, the November 10, 2009 Magistrate Judge's R&R (Doc. 8) is hereby **ADOPTED**. The Court finds that ALJ's decision is supported by substantial evidence and the decision of the ALJ is affirmed. This matter shall be **CLOSED** and **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

                                       */s/ Michael R. Barrett*
                                       Michael R. Barrett, Judge
                                       United States District Court